May it please this honorable court, your honors, Mr. Matthews, Mr. Stinebaugh. On behalf of the City of Wapakoneta, my co-counsel, Mr. Pragin, and I represent Chief Kreitz Safety Service Director Raines and the City of Wapakoneta in this First Amendment retaliation lawsuit. We would ask this court, in conducting de novo review of this matter, deliberate completely removing the speech from the fact pattern. And when that occurs, we are left with this, that with regard to the conduct that occurred in November of 2011, that was then discovered in 2012 and investigated, Mr. Stinebaugh, when asked questions, as a fire captain, when with regard to council members, with regard to his conduct, with regard to his co-workers. Then when that speech was separately investigated by the police chief of the City of Wapakoneta, he continued the pattern of dishonesty. Dishonesty, Mr. Stinebaugh admits, is not a trait that any asked questions, he should answer honestly. When he was disciplined, did they tell him that that was the reason he was being disciplined, because he lied to them when they were investigating him? Yes, he was disciplined for lying. That was the only reason? That was the only reason? I'm asking the court to deliberate removing the speech from it. He was disciplined for violating the chain of command, which is insubordination, and he was disciplined for acts of dishonesty, for lying. Yes. But the problem with taking that approach is that what this case is about is whether we have citizen, we have speech that was made as a citizen, and on a matter of public concern. So what was said does matter, and I don't think it can be taken out of context. Don't you have to, and doesn't your opposing counsel, have to address the issue of whether we have speech as a citizen on a matter of public concern to know whether there's even protection for it? Yes, that is the first element. If the court were to take the elements in order as they are laid out, and the parties in this case do not dispute what legal elements apply to the case, that is the first element. However, where the court is able to determine that element three, plaintiff, has the burden of proving that the speech was the motivating factor for the adverse action, it is our position that the plaintiff has failed, or that the appellee has failed to meet that burden, that Mr. Steinbaugh has not brought forward evidence to prove, which is his burden, that the speech was the motivating factor. Well, there's no question on this record that the speech was the motivating factor of the initiation of the investigation, correct? Of the investigation, yes, but the investigation is not adverse action. Any employer is able to investigate the conduct of the employee. In this particular instance, two counsel members approached Mr. Raines and suggested that they had been spoken to by a firefighter. An investigation, at first, Mr. Raines asked the fire chief, what's going on? The fire chief didn't know, and he followed up. It is unknown at that time what actions or inactions, if any, are going to be discovered, and to suggest that there is no ability to investigate in response to any allegation is not supported by any law. A public employee... No, but the question is not whether you can or can't investigate. The question is whether the investigation results in action that can be found to be retaliatory, correct? Yes, and the investigation revealed two things. The investigation ultimately, in the end, revealed that Mr. Steinbaugh secretively approached three elected Wapak Kaneda council member officials and discussed with them what fire apparatus he believed should be purchased. The fire chief specifically requires him to be present for captain meetings, to participate in expressing his opinion on the management of the department, which includes what equipment will be purchased with the delineated budget that is always set aside in the city for fire equipment purchases. How many fire captains are there? At that time, there were four. Is there anybody higher than a fire captain, but lower than the fire chief? No, he is a direct report to the chief. And do those fire captains, do they have different responsibilities within the department or it's just like four equal platoons or what? I mean, what are those, what's the allocation? Does each captain have specific duties? I guess I'm trying to figure out what a fire captain does that's different from what a policeman does without reading me in one of those charts. No, I would just point out to the court that the captain duties are specifically written in the SOGs, which are in the record and that's at 311. What exactly are, I mean, I can think of different structural organizations in an administrative agency, right? You could have four teams, each one doing the same thing and each one has a captain. Or you could have a hundred jobs and if one job comes up, it's put under this captain and another job comes up, it's put under that captain. Or it could just be a pure rank and they would be treated as lieutenants. I don't know, which is it? These four captains all have the same job duties laid out in the SOGs. They can also, one of them at any point in time, can be appointed to fill in for the chief if the chief is unavailable. And so also they are, they have high authority. To go out to a particular fire, is there one captain who's in charge? Yes, unless the chief is on scene, there's a captain, if he's present, that would be the officer in charge. And the captains are responsible for managing all of those in rank underneath them in the paramilitary organization structure and they are also responsible for discipline. So all of the people under all of the captains or some of the people under one captain, some of the other people under the other captain? Under their various shifts. They are assigned in shifts. They have a captain that would oversee a shift. How many times? So for a particular period of time, there's a captain who's in charge of everybody. Do you understand what I'm asking? Yes, and the answer is yes. In the absence of the chief, one of the captains would take over, I suppose, right? Yes. But they're all equal. The captains are all equal. I guess I'm trying to decide just real quickly how the work of the captains is divided up. Is it divided up by time? Is it divided up by a group of people under them? Or is it divided up by alarm? You know, each captain gets every other alarm. How is the work of the captains divided up? That's all I'm asking. It is divided up by the chief. I think I understand your question. Who does it? How? For example, the chief assigns one of the captains to be the administrative captain to take care of administrative items. One captain may be in charge of inspection while they're all charged with inspecting apparatus. Do they have specific subject matter differences within the? Yes. How many full-time firefighters are there? I don't know the answer to that in the department at this time, at the time of the events in question. So there's one chief, four captains, and a number, small number, large number of firefighters. Of career and auxiliary. So there's ten, a hundred, a thousand? Do you have any clue? The population of WAPOC, the citizens, is 10,000 to give the community is. So it's a small community. It's a small community, um, up 75, north up 75, and I apologize. I don't know the number of firefighters. The first thing you need to decide is whether what he told these council members was a matter of public concern. Do you agree that it was a matter of public concern as to whether they should buy a firetruck, this firetruck? No, because the, while, while, while law addresses that corruption and fraud and mismanagement can and is matters of public concern, in this particular instance, the individual was speaking about which piece of equipment should be purchased in disagreement with the chief. And there was just one piece that was under consideration, right? I truck, a 400,000 plus truck. That was the, that was the truck that the chief recommended to the safety service director. Now, if he called the council members and told them that, that, that somebody was embezzling money from the fire department, that would be a matter of public concern, right? Agreed. And he could call the council members if he wanted to. I would agree that I would agree that, uh, the chain of command still exists, but the law is rather clear that when reporting acts of fraud, uh, such as embezzlement, that that individual would be protected, for example, by whistleblower protection and would be protected by the first amendment because the law encourages, um, corruption to be brought forward so that the public dollar is not squandered. What, um, I was looking at the evidence of harm and I'm struggling with understanding what harm your client would claim came to the department. Um, looking at Mr Raines deposition, he was specifically asked whether this activity itself posed any health or safety risks to anybody within the fire department. He said no. Um, did it pose any health or safety risks to any of the citizens? Um, he said no. Um, so what is the city's interest that we would be weighing against Mr Steinball's interest in speaking in paramilitary organizations? The law is clear that loyalty and trust are paramount to the efficient operation of the paramilitary organization. In this instance, we have identified an individual that has been disloyal, and he was he was, um, dishonest on not just one occasion, but throughout this course on a number of occasions, and that caused disruption in the department. Well, doesn't our Mosh Holder case make it really clear that that paramilitary or however you want to designate this, it's their public safety employees. And doesn't Mosh Holder say that it's not the purpose of our case law, nor it is, nor is it in the rule of this circuit that public safety employers have a in order and discipline than other employers have in their institutional interests. So it seems to me that our law would indicate that that it's not enough to say this is a paramilitary organization. You have to show some harm. And so my question to you is where where does the record reflect, particularly in the face of Mr Raines's denial? Where does the record reflect that there was harm? The record reflects that there was harm because this individual went on to continue to show a lack of respect for the chain of command and engaged in additional acts of misconduct. That doesn't answer the question about harm from from the speech. The harm from the speech is that he he continued to place his own desires and not the standard operating guidelines first and foremost, which is what controls a paramilitary organization to the extent that he went on to then go rogue on an emergency fire call. And these continued acts of of misconduct are demonstrated in the case law where you have individuals that engage in speech and then also engage in misconduct. And it is ultimately the court's finding that the misconduct is what causes the lawful termination of the individual. And there is law from the circuit and outside of the circuit that places a greater interest in upholding the efficient operation of May it please the court. My name is Jason Matthews, and I represent the plaintiff appellee Tom Steinbaugh. Just quickly, I would like to respond to a few of the arguments and a few of the questions that the court posed to Ms Dinkler. And and then I'm happy to answer any of the questions the court may have. Um, one of the earlier questions that Judge Rogers, your honor, had proposed to Ms Dinkler was regarding the responsibilities of the different captains within the fire department. And unfortunately, I can't answer that question. But what I can say is some testimony from Chief Freight's deposition in which he testified to some of the some of the issues relating to Mr Steinbaugh's responsibilities as they relate to the purchase of the fire truck. And during his deposition, Chief Creight's testified that Mr Steinbaugh did not have the authority to either recommend the purchase of the fire engine or to veto that purchase. Additionally, Mr Steinbaugh did not serve on the committee formed within the fire department to make decisions regarding the purchase that no part of his job performance or his job duties involve speaking with counsel regarding the purchase of fire engines. Did he know that this was something that the chief wanted to do from inside consultations because he's on the top level team? Yeah, yeah. During his deposition, there must have been some time when his boss was there was a department-wide meeting that Mr Steinbaugh... So if he had some concern about this that was related to allocation of resources within the agency, apart from whether it's military or not, he could have easily raised them then or he could have kept quiet about them and those are two options, right? And I could see where a pickering balance would fall in favor of going around behind his boss's back if the objection was something in the nature of fraud or something in the nature of corruption or something in the nature of waste in the sense of throwing things away that are valuable, right? But in a context of what's the wise thing for our agency to do, is it any way to run a railroad for you to keep quiet to the person who's primarily responsible for asking for, for instance, budget items to whoever decides whether they get budget items, not to tell that person and then to go behind his back and tell the deciding people this is what you should do, you should overrule my boss that I haven't even suggested is making the wrong decision. Isn't that problematic to almost any agency? I wouldn't disagree that it could be problematic. If you were running an agency, you wouldn't want people to do that, would you? I wouldn't want people to do it. Even if they had good reasons for doing it, it's not the way to do it, is it? I don't understand. I don't understand. Well, I think that the question here is that there's different ways of doing things, but I don't think that the fact that by going to counsel as a taxpayer, he's... Going to counsel as a taxpayer, I understand. If you assume that's the case, I don't have a problem with saying that's the case, but he's going around in a way that the people know that he's a fire captain when he's talking to him. I mean, you can say I'm in my private capacity, but those aren't magic words. I mean, he's challenging what his boss is doing on something that he could reasonably, anyone would reasonably say he could make that objection to his boss. And not only not doing that, but hiding the fact that he's doing that and going around his back. It's called backstabbing. I mean, it's organizations around the country where that happens. Usually when you backstab, your position is in danger when you get found out. I mean, I don't see anything unconstitutional about that. Well, I think that when you weigh the harm under Pickering of what he did, the harm that, as was testified to by Mr. Rains, that essentially there was no harm to the department or to the public. I didn't say there's no harm. It just obvious to me what the harm is. The guy can't run his department because the key people, the main people that he relies on, are not giving him advice on what should be done, but going to his boss and telling them to overrule what he's asking for after they've run it by him. I mean, wouldn't any boss say that interferes with how I run my organization, whether it's paramilitary or not? Well, I think bosses in the public sector are in a unique situation. I'm talking about bosses in the public sector. Anybody in any agency that was a public agency would have problems with that, and not just irritated problems, structural problems with that. How can you run an agency that's supposed to be effective when you can't go to the people that are your budget people and say, this is the budget proposal that I have, and you have somebody who's one of your primary advisors. I'm not talking about a principal, and it's a teacher, and he's got 40 or 400 teachers, and one of the teachers goes to the press. That's different. But if the principal has three vice principals, and one of the vice principals says, I'm going to keep quiet, and then I'm going to go to the school board around your back, why isn't that just sort of on its face problematic? Well, my opinion is that in looking at what rights Mr. Steinball had, I believe that there's deposition testimony from Mr. Steinball that the chief was going to make this decision regardless of what anybody had to say about it. And I understand that it doesn't relieve the obligation. You think you're not effective in persuading your superior. But I think that the issue here is ultimately whether or not Mr. Steinball did have that duty under the chain of command policy to push it, to address the issue with the chief prior to going to counsel. What is the closest case where a bickering, imbalancing went in favor of the plaintiff to this kind of assault? I think... Bickering itself, it seems to be different. That's a high school teacher. Right. It's not the vice principal. I think that probably the most recent Sixth Circuit case would be the Westmoreland case. Tell me about that. That's where we had a firefighter who was part of a dive unit. The department disbanded the dive unit. There was a drowning death. And Westmoreland went before city council, made some inflammatory statements regarding the disbandment of the dive unit, about the decision to disband the dive unit. He accused the people who dissolved the dive unit of being responsible for the deaths of children, correct? That's correct, Your Honor. And... Was he invited to speak before the council? I believe he asked, but I can't... I'm not sure about that. It was all on the up and up, though. He was there. Everybody knew he was there. Yes. So there's none of this going behind some boss's back to change a decision? It's a criticism, right? Yes, Your Honor. After the fact criticism. Isn't that different? Than trying to undermine the decision making process by secretly talking to your superiors? Well, I think in some ways it creates more of a distrust issue because what Mr. Steinbaugh didn't do, he didn't publicly expose any of this. Well, I think that from the standpoint of causing disharmony and discord among the rank and file in the fire department, I believe that the discreet approach may have been the best approach here. If we decide that this, or just assuming it's a matter of public concern in this Pickering weighing, is that to be done as a matter of law by the district court or by us? Or is it a factual finding that has to be decided by the fact finder? The Pickering balancing, it is a question of law. I believe this court has done an overview over that. Why can't we decide to do that and weigh it ourselves? The district court thought that there were some issues of fact, but if this is not an issue of fact, we can decide that for ourselves, right? Well, it's a question of law, but in my opinion, and based on the district court's opinion, there are some questions of fact here that play into it. And I think some of those questions... What would that be? What were those factual bases that it has to decide this? I think some of those factual bases would be when you look at, for example, is a $474,000 fire department dollar fire engine purchase, is that a matter of public concern in the city of Wapakoneta, which has 10,000 citizens and an annual budget of about $50 million a year. I think other questions... If you just do a Pickering analysis, though, you can assume that it's a matter of public concern, right? You're correct, Your Honor. Is there any factual issue as to the Pickering analysis? I'm not saying it's a matter of public concern. We'll have to evaluate that. But once you get to the Pickering analysis, we can assume, arguendo, that it's a matter of public concern. It's still some matters of public concern that fail the Pickering analysis, or else you wouldn't have it. Well, I think one of the issues with the Pickering balance is a factual issue, is just the impact that this would have on the city of Wapakoneta and the fire department of comes down to the testimony of Mr. Raines regarding the harm to the city or the potential harm to the city. I think that part of this comes down to the testimony of Chief Crites on whether or not any of this was part of Mr. Seinbaugh's job responsibilities or to what extent he could have meaningfully influenced this decision. And I also think that the issue with the tax, whether he was speaking as a taxpayer or as opposed to an employee, is also an issue of fact. And additionally... Yes, Your Honor. That's also conceptually distinct a little bit from the Pickering issue, or is it overlapping? I think it comes after the Pickering issue. And then finally, there's been... And this might come into the public versus the private interest piece of it, but there's the portrayal by the city that Mr. Seinbaugh was trying to further some type of personal interest here as opposed to a public interest. And I think that that's where the fact would need to evaluate the testimony of the council members who actually spoke with Mr. Seinbaugh. Because those council members, two of the three had testified that he didn't make any mention of an aerial... Of this purchasing this other truck as opposed to the truck that was ultimately purchased by the city. And... We have a Pickering problem or a Pickering balance in favor of the government, even if the matter was not personal, couldn't you? There's some way you could have... In the paramilitary context, you could have disagreement about which way to attack. And so you go over, you go around the commander to the Uber commander and say, we should go this way. Problems with the chain of command, right? You could do that in a non military context as well. Some people just want to... Like in law enforcement, you may want to focus on this area of crime rather than that area of crime. Therefore, go around your boss. Yes, your honor. But I think that that goes toward to the issue of the chain of command and the city's chain of command policy. Because that policy states that employees are to use the chain of command upward, downward, and laterally in conducting routine fire department business and during emergency situations. And we don't consider this either an emergency situation or routine fire department business. And people can just go around their bosses back to their boss's boss without repercussions, unless there's an explicit policy which says don't do that in agencies throughout the government? Well, I think that the city is claiming that this is a... That there's a parent in an administrative structure that when you work directly for somebody as part of his advisory team and you disagree that you don't secretly go to his boss when he makes a proposal to that boss? Well, the chief did have a chain of command policy and... I'm sorry, an open door policy. And the only person that would be above the chief would be city council. So if the chief has this open door policy that allows rank and file firefighters to skip over... Affirmatively allows people to go secretly to the city council. I don't think that it affirmatively allows that, but it does run contra the structure of a typical paramilitary organization. Okay. Further questions? Thank you, counsel. All right. Thank you. May it please the court. 14 firefighters are underneath the captains and the chief in the city of Wapakoneta. I'm sorry, I didn't have that answer. Is that in the record? It is in the record. If it was one of those firefighters, it might have been different. I'm not understanding. If instead of a fire captain, it was one of those rank and file firefighters that went to city council, this case would be different in terms of pickering analysis? No. Well, the case would be different in that you don't have... The nature of the harm is worse in this particular case because you have the top advisor of the captain going to city council instead of communicating upwardly with his chief. For example, had a captain observed in his duties of hearing from his firefighters that there was an operational issue with a piece of equipment and he wanted to go around the chief with that information and go to council to report it for whatever reason, he's not fulfilling his direct duties to the chief to make him aware of important and crucial information. And the selection of the piece of equipment in this case in order to have productive conversation up the chain, the firefighters talk to the captains, the captains talk to the chief. If the captains aren't giving that information to the chief, the chief is without that information, and that's an important part of the decision-making process with the chief. Did the chief testify that the whistleblower, Mr. Steinbell's contact with the city council was not disruptive or didn't cause any problems? The chief did find it disruptive. He testified that in doing that, there was a breach of loyalty that Mr. Steinbaugh was—he testified, quote, had stabbed him in the back by not conveying his opinions and reasons for purchase of equipment to him through the chain of command. Ms. Matthews suggested that the chief said it was not disruptive, or was that some other witness who said that? That it was not disruptive? Yeah, that his— I recall the chief— Telling these people. I recall the chief testifying that Mr. Steinbaugh's actions had stabbed him in the back. Did he use the word disruptive at all? I don't—if he used the word disruptive, he also used the word stab in the back, but I don't recall the word disruptive in particular. I'm struggling with jurisdiction. There are a number of items discussed in the briefing that appear to me to be disputes of material fact. Your opposing counsel listed some of them, such as the chief's role in the termination itself as a fact question. How do we have jurisdiction of disputes of material fact at this appellate level? The first two elements of this analysis are, according to law, questions of law. The opposing counsel stated that the district court found questions of fact with regard to the first two elements, and that's incorrect. The district court held in favor of Mr. Steinbaugh in the Pickering balancing analysis and on the speech—protected speech issue, and so— But that leaves us—that leaves us with a question of whether summary judgment was appropriate or not below. And if the court below found that there were disputes of material fact, then what—we don't have a role in this—this level of appeal of those disputes, do we? If there is a—if there is a non-question of law and a material question of fact, the court would be divested of jurisdiction if that issue were case dispositive. It is our position that the third and fourth elements—the third, the plaintiff having the burden, the fourth, the defendant having the burden—were met with undisputed facts. The court's opinion does not address what issues of fact existed, if any, and as the briefing sets forth, we're of the opinion that no issues of fact that are material to the decision to be made here exist. And under the recently issued Sheehan case by the United States Supreme Court, the law is not clearly defined. It is not beyond debate, and certainly the combined experience of these two public officials do not somehow equate, as plaintiff argues, to clearly establish the law. And— The finding below the court's denial of summary judgment on the Monell claim, that then cannot be before us. Is that not correct? It is our position that that is properly before you, because it is our position that there is no material question of fact with regard to any of the elements before the court. The decisions made— Both. This is an interlocutory appeal. Is this an interlocutory appeal? It is an interlocutory appeal. So only the person claiming qualified immunity can raise it unless somebody else has an intertwined issue. I assume you're arguing that— That the Monell claim is intertwined with the— You argue that in your brief? Yes. I see them. Thank you, Your Honors. The case will be submitted. I guess you can adjourn the court.